**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CATHERINE QUIGLEY, On Behalf of Herself and All Others Similarly Situated, | ) Civil Action No. ) ) |
| Plaintiff, | ) **CLASS ACTION** |
| v. | ) **COMPLAINT FOR** ) **VIOLATION OF THE** |
| BIOVERATIV INC., JOHN G. COX, ALEXANDER J. DENNER, GENO J. GERMANO, LOUIS J. PAGLIA, BRIAN S. POSNER, and ANNA PROTOPAPAS, | ) **FEDERAL SECURITIES LAWS** ) ) **JURY TRIAL DEMANDED** ) |
| Defendants. | ) ) |

Plaintiff Catherine Quigley ("Plaintiff"), by her undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff brings this action as a public stockholder of Bioverativ, Inc. ("Bioverativ" or the "Company") against the members of Bioverativ's Board of Directors (the "Board" or the "Individual Defendants") and Bioverativ for their violations of Section 14(d)(4), and Rule 14d-9 promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC") pursuant to Section 14 under the Securities Exchange Act of 1934, as well as Section 20(a).

2. Specifically, Defendants solicit stockholder approval of the sale of the Company to Sanofi. in a tender offer by Sanofi's subsidiary Blink Acquisition Corp. ("Merger Sub") (the "Proposed Transaction"), through a recommendation statement that omits material facts necessary to make the statements therein not false or misleading. Stockholders need this material information to decide whether to tender their shares or

pursue their appraisal rights.

3.      On January 22, 2018, the Company announced that it had entered into a definitive agreement (the "Merger Agreement") by which Sanofi, through its wholly-owned subsidiary Merger Sub, would commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of Bioverativ for $105.00 per share in cash (the "Proposed Transaction").  The Proposed Transaction is valued at approximately $11.6 billion.

4.      On February 7, 2018, Merger Sub commenced the Tender Offer, which is set to expire at midnight, one minute after 11:59pm Eastern Time, on March 7, 2018 (the "Expiration Date").  The Tender Offer provides that the number of shares of Bioverativ common stock that have to be validly tendered, together with the shares beneficially owned by Sanofi and its affiliates, if any, must represent at least one share more than one-half (1/2) of the total number of outstanding shares of Bioverativ common stock as of the Expiration Date or at the time and date to which the Tender Offer has been extended.  The Tender Offer is not subject to any financing condition.

5.      In connection with the commencement of the Tender Offer on February 8, 2018, the Company filed a Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the Company's financial projections, the financial analysis performed by the Company's financial advisor, and the process leading to the Merger Agreement. Without all material information Bioverativ stockholders cannot make an informed decision to exchange their shares in the Tender Offer.  The failure to adequately disclose such material information constitutes a violation of §§ 14(d)(4), 14(e) and 20(a) of the

Exchange Act as stockholders need such information in order to make a fully-informed decision regarding tendering their shares in connection with the Proposed Transaction about whether to exchange their shares.

6. For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under §§ 14(d), 14(e) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. The Court has personal jurisdiction over all of the defendants because each is either a corporation that conducts business in and maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Bioverativ maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion

of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

10. Plaintiff is, and has been at all times relevant hereto, a stockholder of Bioverativ.

11. Bioverativ is a corporation organized and existing under the laws of the State of Delaware. It maintains its principal executive offices at 225 Second Avenue, Waltham, Massachusetts, 02451. Common stock in Bioverativ is publicly traded on the NASDAQ under the ticker symbol "BIVV." Bioverativ is named as a defendant herein solely for the purpose of providing full and complete relief.

12. Defendant John G. Cox ("Cox") has been Chief Executive Officer ("CEO") and a director of the Company since August 2016.

13. Defendant Alexander J. Denner ("Denner") has been a director of the Company since January 2017.

14. Defendant Geno J. Germano ("Germano") has been a director of the Company since May 2017.

15. Defendant Louis J. Paglia ("Paglia") has been a director of the Company since January 2017

16. Defendant Brian S. Posner ("Posner") has been Chairman of the Board and a director of the Company since January 2017.

17. Defendant Anna Protopapas ("Protopapas") has been a director of the Company since February 2017.

18. Defendants Cox, Denner, Germano, Paglia, Posner, and Protopapas are collectively referred to herein as the "Individual Defendants" or the "Board."

19. Defendants Bioverativ and the Individual Defendants are collectively referred to as the "Defendants."

20. Sanofi, a non-party, is a French multinational pharmaceutical company with United States headquarters in Bridgewater, New Jersey. Sanofi focuses on human vaccines, rare diseases, multiple sclerosis, oncology, immunology, infectious diseases, diabetes and cardiovascular solutions, consumer healthcare, established prescription products and generics products.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of all persons and/or entities that own Bioverativ common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

22. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of February 1, 2018, there were 108,223,091 shares of common stock issued and outstanding. All members of the Class may be identified from records maintained by Bioverativ or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

23. Questions of law and fact are common to the Class, including (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Recommendation Statement in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class entitled is to injunctive relief as a result of Defendants' wrongful conduct.

24. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

25. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

26. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

27. Bioverativ was spun off from Biogen, Inc. in 2017 as a company focused on the research, development, and commercialization of hemophilia treatments, including Eloctate and Alprolix.

28. In a joint press release dated January 22, 2018, the Company announced that it had entered into the Merger Agreement with Sanofi, pursuant to which the Company will be acquired for $105.00 in cash in the Tender Offer.

29. In relevant part, the press release reads:

Paris (France) and Waltham, Mass. – January 22, 2018 – Sanofi and Bioverativ Inc., a biopharmaceutical company focused on therapies for hemophilia and other rare blood disorders, have entered into a definitive agreement under which Sanofi will acquire all of the outstanding shares of Bioverativ for $105 per share in cash, representing an equity value of approximately $11.6 billion (on a fully diluted basis). The transaction was unanimously approved by both the Sanofi and Bioverativ Boards of Directors.

"With Bioverativ, a leader in the growing hemophilia market, Sanofi enhances its presence in specialty care and leadership in rare diseases, in line with its 2020 Roadmap, and creates a platform for growth in other rare blood disorders. Together, we have a great opportunity to bring innovative medicines to patients worldwide, building on Bioverativ's success in driving new standards of care with its extended half-life factor replacement therapies," commented Olivier Brandicourt, Sanofi's Chief Executive Officer. "Combined, we will continue to leverage our scientific know-how, disciplined focus and development expertise that best position us to drive value for our shareholders and create breakthrough treatments for patients."

Bioverativ Chief Executive Officer, John Cox, noted, "Bioverativ was created to bring meaningful progress to people living with hemophilia and other rare blood disorders, and I am extremely proud of the accomplishments we've made toward that mission over the past year. We have expanded upon the success of Eloctate and Alprolix, which are making a difference in the lives of people with hemophilia every day, and built a pipeline of novel programs for people with rare blood disorders. Sanofi brings proven capabilities and a global infrastructure, which we believe will help to more rapidly expand access to our medicines globally and further our mission of transforming the lives of people with rare blood disorders. Our Chairman, Brian Posner, our entire Board and I strongly believed our spin-off would create meaningful value for shareholders, and this transaction delivers tremendous value for the shareholders who have invested in and supported our mission."

\* \* \* \* \*

**Strengthening Sanofi's Specialty Care Portfolio**
One of the priorities of Sanofi's 2020 roadmap is to "Reshape the Portfolio" and focus on areas where the company currently has, or can effectively build, a leadership position. The addition of Bioverativ supports this priority by adding to our portfolio a differentiated offering of innovative therapies and providing a platform for growth in rare blood disorders, which will expand our presence in specialty care, further strengthen our leadership position in rare diseases and meet the needs of

7

the patient community.

Beyond its two marketed products, Bioverativ's pipeline includes a program in Phase 3 testing for cold agglutinin disease, and early stage research programs and collaborations in hemophilia, and other rare blood disorders, including sickle cell disease and beta thalassemia. Sanofi's R&D organization will support Bioverativ in bringing these important therapies to patients faster. Furthermore, Sanofi's global presence, proven expertise and success in launching specialty medicines, and established footprint in key emerging markets will help Bioverativ fully capitalize on growth opportunities for Bioverativ's current and future products.

**Delivering Shareholder Value**

The addition of Bioverativ is expected to drive meaningful value for Sanofi's shareholders, with strong cash flows from Bioverativ's growing products expected to increase Sanofi's financial and operational scale. The acquisition is expected to be immediately accretive to Sanofi's Business EPS in FY2018 and up to 5% accretive in FY2019. Sanofi is also projected to achieve ROIC in excess of cost of capital within three years. Sanofi expects to preserve its strong credit rating. Transaction Terms Under the terms of the merger agreement, Sanofi will commence a tender offer to acquire all of the outstanding shares of Bioverativ common stock at a price of $105 per share in cash. The $105 per share acquisition price represents a 64 percent premium to Bioverativ's closing price on January 19, 2018.

The consummation of the tender offer is subject to various conditions, including the tender of at least a majority of the outstanding Bioverativ shares, redelivery of a tax opinion delivered at signing, the expiration or termination of the waiting period under the Hart Scott Rodino Antitrust Improvements Act and receipt of certain other regulatory approvals, and other customary conditions. Following the successful completion of the tender offer, a wholly owned subsidiary of Sanofi will merge with Bioverativ and the outstanding Bioverativ shares not tendered in the tender offer will be converted into the right to receive the same $105 per share in cash paid in the tender offer. The tender offer is expected to commence in February 2018.

30. On February 7, 2018, Merger Sub commenced the Tender Offer and the Company filed the Recommendation Statement with the SEC on February 8, 2018. The Tender Offer is currently scheduled to close on March 7, 2018.

*The Recommendation Statement Fails to Disclose Material Information Concerning the Company's Financial Projections*

31. On February 8, 2018, the Company filed the materially misleading and incomplete Recommendation Statement with the SEC. Designed to convince stockholders to tender their shares in favor of the Proposed Transaction, the Recommendation Statement is rendered misleading by the omission of critical information concerning the future prospects for the Company. These projections were used by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Guggenheim Securities, LLC ("Guggenheim"), and presented to the Board, but are omitted from the Recommendation Statement.

32. The Recommendation Statement fails to disclose: (i) the estimated unlevered free cash flows to be generated by each of the Company's products and product candidates over the projection period of 2018 through 2035; (ii) Company management's assumptions regarding the probability of success of the products currently under development by the Company used to derive the Management Projections; and (iii) quantification of the probabilities, assigned by Company management, of achieving regulatory success and/or commercial success with its products and the sources of the quantification of the probabilities assigned by Company management.

*The Recommendation Statement Fails to Disclose Material Information Concerning the Financial Analysis of J.P. Morgan and Guggenheim*

33. The Recommendation Statement describes the analyses performed by J.P. Morgan and Guggenheim in support of their respective fairness opinions. However, the description of these analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Bioverativ stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions

in determining whether to tender their shares. This omitted information, if disclosed, would significantly alter the total mix of information available to Bioverativ's stockholders.

34. With respect to J.P. Morgan's *Sum-of-the-Parts Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose (i) the inputs and assumptions underlying the discount rate range of 8.25% to 10.25%.

35. Similarly, with respect to J.P. Morgan's *WholeCo Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the inputs and assumptions underlying the discount rate range of 8.25% to 10.25%.

36. With respect to Guggenheim's *Discounted Cash Flow Analyses*, the Recommendation Statement fails to disclose: (i) the projected, risk-adjusted, after-tax unlevered free cash flows (after deduction of stock-based compensation) for each of the Company's existing and pipeline products used in the *Sum-of-the-Parts Discounted Cash Flow Analysis*; and (ii) the inputs and assumptions underlying the discount rate range of 8.5% to 10.5%.

37. With respect to Guggenheim's *Selected Precedent Merger and Acquisition (M&A) Transactions* analysis, the Selected Precedent M&A Transaction Multiples chart ("Transaction Multiples Chart") set forth on page 50 of the Recommendation Statement is false and misleading. The Transaction Multiples Chart sets forth that the "High" multiples for Transaction Enterprise Value/NTM Adjusted EBITDA and Transaction Stock Price/NTM EPS for the selected precedent merger and acquisition transactions were 20.7x and 26.6x, respectively. However, this directly contradicts the analysis performed by J.P. Morgan for the same transactions. In its analysis, J.P. Morgan excluded the EV/NTM Adjusted EBITDA and Price/NTM EPS multiples for two transactions, Johnson & Johnson's acquisition of Actelion Ltd. and Valeant International Inc.'s acquisition of Salix Pharmaceuticals, Inc., as not meaningful, stating that "EV/Adjusted EBITDA

multiples above 25.0x and price/EPS multiples above 35.0x listed as "NM."" But Guggenheim claims that the values for these transactions were far lower. This misstatement brings into question the accuracy of the entire analyses performed by the financial advisors, and must be acknowledged and corrected.

38.     This same type of error is present in the summary of Guggenheim's *Selected Publicly Traded Companies Analysis*. The Company Multiples Chart sets forth that the "High" Enterprise Value/2018E Adjusted EBITDA and Stock Price at 01/19/18/2018E EPS multiples for the selected publicly traded companies analyzed by Guggenheim were 14.3x and 17.4x, respectively. But J.P. Morgan analyzed the same nine publicly traded companies for its *Public Trading Multiples* analysis. and concluded that the multiples for three companies, Vertex Pharmaceuticals Inc., Incyte Corporation and BioMarin Pharmaceutical Inc., were not meaningful, stating "EV/Adjusted EBITDA multiples above 25.0x and price/EPS multiples above 35.0x listed as not meaningful ("NM")." This misstatement brings into question the accuracy of the entire analyses performed by the financial advisors, and must be acknowledged and corrected.

39.     Without this additional information, Bioverativ stockholders have been provided materially incomplete and misleading information regarding the valuation analyses performed by the Company's financial advisors.

***The Recommendation Statement Fails to Disclose Material Information Concerning Potential Conflicts of Interest***

40.     The Recommendation Statement also misleads Bioverativ stockholders with respect to potential conflicts of interest faced by Company management.

41.     First, the Recommendation Statement sets forth that "it is possible that additional members of our current management team will enter into new employment or consulting arrangements with the Surviving Corporation. Such arrangements may include the right to

11

purchase or participate in the equity of Purchaser or its affiliates. Any such arrangements with our existing management team are currently expected to be entered into after the completion of the Offer and will not become effective until after the Merger is completed, if at all.  There can be no assurance that the applicable parties will reach an agreement on any terms, or at all."

42. Given the unique nature of Bioverativ's assets, Sanofi personnel are unlikely to be able to manage the post-close transition without the assistance of current Bioverativ management.

43. Nevertheless, the Recommendation Statement completely omits any of the employment-related communications, discussions, and/or negotiations that took place during the lead-up to the Merger Agreement.

44. This omission is materially misleading to Bioverativ stockholders because Company management played a key role in the preparation of the Company's financial projections that were relied upon by the Company's financial advisor.

45. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## CLAIMS FOR RELIEF

### COUNT I

**Individual Claims Against All Defendants for Violations of § 14(e) of the Securities Exchange Act of 1934**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

48. As discussed above, Bioverativ filed and delivered the Recommendation Statement to its stockholders, which defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

49. Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the tender offer commenced in conjunction with the Proposed Transaction. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50. The Recommendation Statement was prepared, reviewed and/or disseminated by defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the tender offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

51. In so doing, defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

52. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

53. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

54. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II

**Individual Claims Against All Defendants for Violations of § 14(d)(4) of the Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)**

55. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

57. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

58. The Recommendation Statement violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.

59. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

60. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

### COUNT III

### Individual Claims Against All Defendants for Violations of § 20(a) of the 1934 Act Against the Individual Defendants

61. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62. The Individual Defendants acted as controlling persons of Bioverativ within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Bioverativ and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Recommendation Statement.

65. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

66. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d)(4) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring that the Recommendation Statement is materially false or misleading;

(B)     enjoining, preliminarily and permanently, the Proposed Transaction;

(C)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D)     directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)     granting Plaintiff such further relief as the Court deems just and proper.

Dated: February 21, 2018                               **LEVI & KORSINSKY, LLP**

                                                By:   */s/ Shannon L. Hopkins*
                                                      Shannon L. Hopkins (BBO#657485)
                                                      733 Summer Street, Suite 304
                                                      Stamford, CT 06901
                                                      Tel: (203) 992-4523
                                                      Fax: (212) 363-7171
                                                      shopkins@zlk.com

                                                      *Attorneys for Plaintiff*

**OF COUNSEL:**

**LEVI & KORSINSKY LLP**
Donald J. Enright, Esq.
Elizabeth K. Tripodi, Esq.
1101 30th Street NW
Suite 115
Washington, DC 20007
Tel: (202) 524-4292
Fax: (202) 333-2121
denright@zlk.com

etripodi@zlk.com